UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NICOLE M. PEEK, JEREMY J. MING & o/b/o Child(ren), JOHN & JANE DOE- as same or similar in class,

      Plaintiffs

  v.

DUANESBURG CENTRAL SCHOOL DISTRICT (and/or any aliases), and any unnamed employee(s)/agent(s)/school district(s) also responsible for same or similar cause of action, CELESTE JUNGE (in all capacities), DR. JAMES NIEDERMEIER (in all capacities), SCHENECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES (Child Protective Service (CPS)), JOHN AND JANE DOE (in all capacities), and any un-named corporation/entity/agency found liable, any other known/unknown accommodation and/or relevant parties.

      Defendants.

1:23-cv-00388(AMN/ML)

---

**APPEARANCES:**

**NICOLE M. PEEK**
3268 E Lydius St.
Schenectady, NY 12303
*Plaintiff pro se*

**JEREMY J. MING**
8298 Duanesburg Rd (#6)
Delanson, NY 12053
*Plaintiff pro se*

**GIRVIN & FERLAZZO, P.C.**
20 Corporate Woods Boulevard
Albany, NY 12211-2350
*Attorneys for Defendants Duanesburg Central School District, Dr. James Niedermeier, and Celeste Junge*

**OF COUNSEL:**

**PATRICK J. FITZGERALD, ESQ.**
**DANIEL S. L. RUBIN, ESQ.**

| | |
|---|---|
| **GOLDBERG SEGALLA, LLP**<br>8 Southwoods Boulevard, Suite 300<br>Albany, NY 12211<br>*Attorneys for Defendant Schenectady*<br>*County Department of Social Services* | **JONATHAN M. BERNSTEIN, ESQ.** |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

On June 2, 2023, Plaintiffs Nicole M. Peek ("Plaintiff" or "Peek"), Jeremy Ming ("Plaintiff" or "Ming"), and "(BT, CM) (John and Jane Doe)"[1] (collectively "Plaintiffs") filed an Amended Complaint against Defendants Duanesburg Central School District ("Duanesburg"), Duanesburg Superintendent of Schools Dr. James Niedermeier ("Superintendent Niedermeier"), and Celeste Junge, Secretary to the Superintendent at Duanesburg ("Junge") (collectively the "School District Defendants"), and Defendant Schenectady County Department of Social Services ("DSS" or "Defendant"),[2] alleging multiple statutory causes of action. *See* Dkt. No. 14.

Defendants moved to dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. Nos. 23, 26 (the "Motions").[3] Plaintiffs filed an Opposition to Defendants' Motions. Dkt. No. 35.[4] For the reasons set forth below, Defendants'

---

[1] It appears from Plaintiffs' Opposition that "BT" and "CM" refer to Plaintiffs' minor children. Dkt. No. 35 at 2-3.

[2] The "School District Defendants" and the "DSS" are collectively referred to as "Defendants."

[3] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

[4] Plaintiffs' Opposition was originally filed as Dkt. No. 34. Plaintiffs refiled their Opposition to include an attached exhibit. *See* Dkt. No. 35. The Court is also in receipt of Plaintiffs' "attachments of further evidence," filed on October 18, 2023, Dkt. No. 36, the School District Defendants' "Memorandum of Law in Further Support of Motion to Dismiss or, in the Alternative to Strike," filed on November 3, 2023, Dkt. No. 38, and Plaintiffs' Sur-Reply Memorandum of Law in "Support of Further Answers and Objections," filed on November 16, 2023, Dkt. No. 39.

Motions are granted in their entirety, and the Amended Complaint is dismissed with prejudice.[5]

## II.     BACKGROUND[6]

The following facts are drawn from the Amended Complaint and are assumed to be true for purposes of ruling on the Motions.  *See Div. 1181 Amalg. Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*).

Plaintiffs "at one point had [a] child enrolled in [Duanesburg] and decided to homeschool [the child] while building a family church with a private religious school [referred to as the "Valley of Baca"] held in Trust separate from home with its members." Dkt. No. 14 at ¶ 1.[7]  Plaintiffs allege that they "informed [the] District or agents thereof since the beginning of [their] intentions and eventually had met [their] goals yet [the] district was still insistent on certain alleged 'requirements' and made verbal threats to call Child [P]rotective [S]ervices and slander if [they] did not continue filling out arduous reports with minimal relevance to actual development." *Id.* at ¶ 7.

On March 7, 2023, Junge started an email correspondence with Peek, asking Peek to

---

[5] The School District Defendants also moved, in the alternative, to strike Plaintiffs' Amended Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  Dkt. No. 23.  A court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Because the Court is granting the School District Defendants' Motion to dismiss, the Court need not address the motion to strike.

[6] Because Plaintiffs are proceeding *pro se*, the Court construes Plaintiffs' Amended Complaint liberally.  *See Washington v. Reilly*, 226 F.R.D. 170, 171 (E.D.N.Y. 2005) ("It is well-settled that the Court must read Plaintiff's *pro se* Amended Complaint liberally . . .  Moreover, *pro se* litigants are afforded a wide degree of latitude with regard to their submissions, as the Court construes their papers to raise the strongest arguments that they suggest.") (internal quotation marks and citations omitted).

[7] Plaintiffs' Opposition clarifies that "B.T. [a]ttended Duanesburg . . . in 2020 and virtually in 2021 and 2022 when . . . [P]laintiffs decided to 'homeschool….'"  Plaintiffs state that they gave a letter of intent to homeschool in February 2022.  They further state that "the following School Year of 2023 our intention was to use our family chapel to designate/donate a space for furthering the education of [our children]." Dkt No. 35 at 2.

"[p]lease advise the private school your son is attending so we can update our files." *Id.* at 26. That same day, Peek replied that "[t]he Private Religious school [her son] is attending is called The Valley of Baca." *Id.* at 27.[8]  On March 8, 2023, Junge responded, "Thank you for the information.  We will update our file." *Id*. at 28.  On March 18, 2023, Peek said, "it's my understanding that we're entitled to some reimbursements under state law for the homeschooling period" and asked, "[w]ho should I send the invoice to?" *Id.* at 30.   Plaintiffs allege that despite a request for reimbursement, they were not reimbursed for their homeschooling expenses.  *Id.* at ¶¶ 24-25.  Plaintiffs allege that they sent "all materials" to Superintendent Niedermeier,[9] and the School District Defendants "made a [k]nowingly [f]alse [r]eport to . . . Social Services and [the] guidance office at" Duanesburg.  Dkt. No. 35 at 2-3.[10]

The Amended Complaint further alleges that the "Defendants['] [f]raudulent and prejudicial claims caused [two] separate vehicles of Schenectady County Sherriff's Department to go to one of Plaintiff[s'] place of business and knock on every occupied door therein in an attempt to locate Plaintiff(s)."  Dkt. No. 14 at ¶ 15.  Specifically, Plaintiff Ming alleges that on March 24, 2023, "two Schenectady [C]ounty sheriff['s] officers and two people that [Ming] imagined were some sort of social workers" knocked on his door and "proceeded to tell [Ming] that they received a report that [the] children are being neglected of an education and that [the children] are

---

[8] Plaintiffs clarified that the "Valley of Baca" was their "home family chapel."  *See* Dkt. No. 35 at 2.

[9] Plaintiff Peek's "Affidavit of Truth" also states that she notified Duanesburg and "Capital Region Boces" that her son was attending a private religious school and while she "[r]ecently stopped sending [] reports to Capital Region Boces," she "continued to write them and track his academic progress for his schooling and development."  Dkt. No. 35 at 38.

[10] The School District Defendants' Response to Plaintiffs' Opposition clarifies that the School District Defendants made a hotline call to the Office of Children and Family Services because Plaintiffs allegedly were not complying with their home-schooling requirements.  Dkt. No. 38 at 4.

4

malnourished and a welfare check should be done on them." *Id.* at 37. Ming asserts that he "allowed the social workers to see [the children] and [he] took pictures of all the stored food [as they requested] … but [he] would not allow them entry." Dkt. No. 35 at 3.

Peek emailed Junge regarding the School District calling the Office of Children and Family Services. Dkt. No. 35 at 9. On March 31, 2023, Superintendent Niedermeier responded by email to Peek stating, "[a]s a mandated reporter, it is my obligation to notify the Office of Children and Family Services when families do not follow through with home schooling requirements." *Id.*

### III.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to show that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, a pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the . . . complaint must be dismissed." *Id.* at 570.

"[I]n a *pro se* case . . . the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting, *inter alia*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit has held that courts are obligated to "'make reasonable allowances to protect *pro se* litigants'" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

### IV. DISCUSSION

#### A. Plaintiffs' *Pro Se* Representation of Their Children

Defendants argue that Plaintiffs cannot represent their children as *pro se* litigants. *See* Dkt. No. 23-1 at 11; Dkt. No. 26-1 at 9. In response, Plaintiffs argue that they "[s]omewhat [a]gree[] however to say a Parent, in no fact, may represent their children would be an erroneous conclu[sion] of law and well established general rules." Dkt. No. 35 at 5. Contrary to Plaintiffs' assertion, it is well-established in the Second Circuit that *pro se* parents cannot bring claims on behalf of their minor children. *See, e.g.*, *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284

(2d Cir. 2005) ("It is thus a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child.") (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 201 (2d Cir. 2002) ("In this Circuit, a non-attorney parent is precluded from representing his or her child in federal court.") (citation omitted); *Ziegler on behalf of G.S. v. Multer*, No. 1:18-CV-880 (GLS/DJS), 2018 WL 4610666, at *2 (N.D.N.Y. Aug. 27, 2018) (same).

Accordingly, Defendants' Motions to dismiss Plaintiffs' claims to the extent they are brought on behalf of Plaintiffs' minor children, "BT" and "CM," are granted.

**B. DSS as a Proper Party**

DSS argues that it is not a proper party in this action. Dkt. No. 26-1 at 7-8. "Under Federal Rule of Civil Procedure 17(b), an entity is suable in federal court only if it would be suable under the laws of the state where it was created." *Omnipoint Commc'ns, Inc. v. Town of Grange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) (citing *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 214 (1993)). Therefore, New York law governs whether DSS can be sued as a defendant in this Court.

"In New York, agencies of a municipality are not suable entities" because "departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." *Omnipoint Commc'ns*, 658 F. Supp. 2d at 552 (citations omitted). DSS is an administrative agency of Schenectady County, and therefore is not a proper party to be sued. *See Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 551-52 (E.D.N.Y. 2013) (dismissing Suffolk County Department of Social Services as an improper party); *In re Dayton*, 786 F. Supp. 2d 809, 818 (S.D.N.Y. 2011) (dismissing Orange County Department of Social

Services as an improper party).  Accordingly, the Court grants DSS's Motion to dismiss on this basis.[11]

### C. School District Defendants' Immunity from Liability

The School District Defendants argue that they are immune from liability because after Plaintiffs "failed to abide by various statutory requirements governing home schooling," including failing to submit a quarterly progress report, the School District Defendants made a hotline call to the Office of Children and Family Services "in accordance with their mandatory reporting requirements under New York Social Services Law."  Dkt. No. 38 at 2.  In Response, Plaintiffs argue that a late quarterly report "is not neglect," they were not required to send quarterly reports because Plaintiffs' intent was "no longer to homeschool" the children, the actions of Defendants were not "in 'good faith' [because] the child [was not] in any imminent danger," and Defendants did not follow the procedures outlined in 8 NYCRR § 100.10 before contacting the Office of Children and Family Services.  Dkt. No. 39 at 4-9.

New York Social Services Law ("Social Services Law") § 413 requires a school official to report suspected educational neglect[12] when "reasonable cause exists to suspect that a child is abused or maltreated where a person comes before them in their professional or official capacity and states from personal knowledge facts, conditions, or circumstances which, if correct, would

---

[11] Because the Court finds that DSS is not a proper party, the Court will not address its additional argument regarding Plaintiffs' failure to file a notice of claim.  Dkt. No. 26-1 at 8.

[12] Pursuant to New York's "home instruction" regulations set forth in 8 NYCRR § 100.10(g), parents are required to submit quarterly reports to the school district for each child that is homeschooled.  Evidence of educational neglect includes a parent failing to comply with the regulations in 8 NYCRR § 100.10, including a "failure to maintain appropriate records, [and] file required reports."  *See In re William AA.*, 807 N.Y.S.2d 181, 183 (3d Dep't 2005).

render the child an abused or maltreated child."[13]  A school official who fails to report "suspected child abuse or maltreatment . . . shall be guilty of a class A misdemeanor."  Social Services Law § 420.

Additionally, pursuant to Social Services Law § 419, a school district that complies in good faith with its reporting requirement is entitled to immunity.  *See Schlar v. Fayetteville*, 753 N.Y.S.2d 636, 637 (4th Dep't 2002) (finding that a school district was immune from liability for good faith compliance with reporting requirements where it reported suspected educational neglect and "plaintiffs failed to present sufficient factual allegations that defendants were motivated by actual malice in making the report").[14]

Here, Plaintiffs allege that they notified the School District Defendants of their intentions to homeschool their son and then have their son receive his education at a private religious school, the "Valley of Baca."  Dkt. No. 14 at ¶¶ 1, 7.  Plaintiff Ming alleges in his sworn affidavit that "two Schenectady [C]ounty sheriff['s] officers and two [social workers] … proceeded to tell [him] that they received a report that [the] children are being neglected of an education and that [the children] are malnourished and a welfare check should be done on them."  Dkt. No. 14 at 37.  After Peek emailed Junge regarding Duanesburg's hotline call to the Office of Children and Family Services, *see* Dkt. No. 35 at 9, Superintendent Niedermeier emailed Peek explaining that "[a]s a mandated reporter, it is my obligation to notify the Office of Children and Family Services when families do not follow through with home schooling requirements," *see id*.  The Court finds that

---

[13] Reports must be made to the Central Register of the Child Abuse and Maltreatment hotline by dialing 1-800-342-3720.  Dkt. No. 28 at 3 (citing Social Services Law § 422).

[14] Social Services Law § 419 states that "[a]ny person, official, or institution participating in good faith in . . . making of a report . . . or the disclosure of child protective services information . . . shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions."

based upon Plaintiffs' allegations of the relevant facts, the School District Defendants complied in good faith with their statutory obligation when they made the hotline call to the Office of Children and Family Services and are therefore immune from liability pursuant to Social Services Law § 419.  Accordingly, the Court grants the School District Defendants' Motion to dismiss Plaintiffs' Amended Complaint to the extent Plaintiffs' allegations are based on the hotline call to the Office of Children and Family Services.

### D. Plaintiffs' Statutory Causes of Action

Plaintiffs allege two causes of action "based upon a theory of statutory liability against all Defendants."  *See* Dkt. No. 14 at 12-16.  Defendants argue that these statutory causes of action—made up of dozens of state and federal statutes, with the sole exception of Plaintiffs' claim pursuant to 42 U.S.C. § 1983—fail to state a cognizable claim and should be dismissed with prejudice.  Dkt. No. 23-1 at 13; Dkt. No. 26-1 at 9.

Defendants first argue that Plaintiffs assert claims pursuant to statutes for which no private right of action exists.  Dkt. No. 23-1 at 14; Dkt. No. 26-1 at 9.[15]  Specifically, Plaintiffs cite several federal[16] and state[17] criminal statutes.  Dkt. No. 23-1 at 14.  Courts in this district have recognized

---

[15] In response, Plaintiffs concede that they "may have [made an error] in some penal law citing" but assert that the "majority is correct."  Dkt. No. 35 at 5-6.

[16] *See* 18 U.S.C. §§ 242 (deprivation of rights under color of law), 241 (conspiracy against rights), 245 (federally protected activities), 1918 (disloyalty and asserting the right to strike against the Government), 244 (discrimination against person wearing uniform of armed forces), 1201 (kidnapping), 3283 (statute of limitations for offenses against children), 2340 (defining "torture"), 287 (false, fictitious or fraudulent claims to the military). Dkt. No 14 at ¶¶ 38, 40-41, 51, 57, 61, 63-65.

[17] *See* New York Penal Law §§ 240.36 (loitering in the first degree), 240.50 (falsely reporting an incident in the third degree), 135.60 (coercion in the third degree), 155.05 (larceny), 155.25 (petit larceny), 210.45 (making a punishable false written statement), 210.35 (making an apparently sworn false statement in the second degree), 120.15 (menacing in the third degree), 240.30 (aggravated harassment in the second degree), 130.52 (forcible touching), 175.35 (offering a false

"that there is no private right of action to enforce state or federal criminal statutes unless the statute specifically authorizes it." *Ming v. Brouillete*, No. 6:23-CV-0086 (MAD/ML), 2023 WL 5444485, at *2 (N.D.N.Y. 2023); *McFadden v. Ortiz*, No. 5:12-CV-1244 (MAD/ATB), 2013 WL 1789593, at *3 (N.D.N.Y. Apr. 26, 2013) (holding that "there is no private right of action to enforce either state or federal criminal statutes"); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting that "in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or [non-prosecution] of another"). Additionally, Plaintiffs cite various laws which do not provide for a private right of action.[18] Accordingly, the Court dismisses Plaintiffs' claims pursuant to statutes for which no private right of action exists.

Defendants next argue that Plaintiffs assert claims pursuant to several statutes which do not apply to the facts alleged in the Amended Complaint. Dkt. No. 23-1 at 16-17; Dkt. No. 26-1 at 9.[19] The Court agrees that even when construing Plaintiffs' Amended Complaint liberally, these

---

instrument for filing in the first degree), 200.00 (bribery in the third degree), 200.04 (bribery in the first degree). Dkt. No. 14 at ¶¶ 28-36.

[18] *See* 42 U.S.C. § 3631 (Dkt. No. 14 at ¶ 42); 42 U.S.C. § 14141 (*id.* at ¶ 43); 20 U.S.C. § 1232g and corresponding federal regulations (*id.* at ¶ 65); Title 6 of the New York Social Services Law §§ 411-428 (*id.* at ¶¶ 67-68).

[19] Specifically, Plaintiffs' Amended Complaint cites to the following statutes: 28 U.S.C. § 518 (governing conduct and argument by the United States Attorney General) (Dkt. No 14 at ¶ 37); 42 U.S.C. §§ 3603, 3604, 3617, 3631 (governing violations and penalties related to the Fair Housing Act) (*id*. at ¶¶ 42 & 54); 28 U.S.C. §§ 351-364 (governing complaints against judges and judicial discipline) (*id.* at ¶ 44); 5 U.S.C. § 7311 (governing public officials' conduct regarding loyalty and striking) (*id.* at ¶ 51); 15 U.S.C. § 1 (the Sherman Act governing antitrust actions) (*id.* at ¶ 56); 22 U.S.C. § 2755 (prohibiting discrimination with respect to "Foreign Relations and Intercourse") (*id.* at ¶ 58); 29 C.F.R. § 1605 (containing Equal Opportunity Employment Commission regulations) (*id.*); 31 U.S.C. §§ 3729-3733 (the Federal False Claims Act) (*id.* at ¶¶ 59, 66); the Federal Torts Claims Act (*id*. at ¶ 59); Violence Against Women Act, 55 Cal App.2d 322, 130 P.2d 131, 134, Tex. Civ. App 143 S.W" (*id*. at ¶ 60); and New York Social Services Law §§ 400-410 (spanning 5 titles, including "powers and duties of public welfare officials," "child welfare services," "preventive services for children and their families," "child welfare services planning and administration," "services; pregnant adolescents" and "day care for certain children.") (*id*. at ¶ 68). Plaintiffs also cite "130 P.2d 131,134," *see* Dkt. No. 14 at ¶ 60. This cite appears to be to a

statutes do not apply to the facts alleged. Accordingly, the Court dismisses any claims against Defendants premised on these statutes. *See, e.g.*, *Garcia v. Paylock,* No. 13-CV-2868 (KAM), 2014 WL 298593, at *7 (E.D.N.Y. Jan. 28, 2014) (dismissing plaintiff's claim pursuant to 42 U.S.C. § 1985(2) because the claim was "wholly unrelated to the allegations in the complaint"); *Yusim v. Astoria Fed*. Sav., No. 12-CV-1805 (SLT), 2012 WL 1417206, at *1 (E.D.N.Y. Apr. 24, 2012) (granting motion to dismiss a complaint when the "statutes to which [the] plaintiff cites [did] not apply to the facts as alleged").

Finally, Defendants argue that Plaintiffs assert claims which reference "misidentified or nonexistent statutes." Dkt. No. 23-1 at 17; Dkt. No. 26-1 at 8-9.[20] The Court finds, even construing these allegations liberally, the citations to "misidentified or nonexistent statutes" cannot form the basis of valid claims against Defendants. Accordingly, the Court grants Defendants' Motions to dismiss these paragraphs.[21]

### E. Plaintiffs' 42 U.S.C. § 1983 Claims

Plaintiffs' second cause of action alleges violations of 42 U.S.C. § 1983 ("Section 1983") pursuant to "[v]iolations" of the First, Fourth, Fifth, Ninth, Thirteenth and Fourteenth

---

California case *People v. McIlvain*, 55 Cal. App. 2d 322, 130 P.2d 131 (1942), interpreting California penal law provisions related to rape.

[20] Specifically, Plaintiffs cite to a group of inapplicable public laws including: "45 stat 54," "80 stat 613," "94 stat 1743," "96 stat 32," and "106 stat 4516" without clearly identifying which statute they are referring to or how the statute is applicable to the allegations in the Amended Complaint (Dkt. No 14 at ¶ 39); "rule 59" without specifying which rules are being referred to (*id.* at ¶ 44); and Sections "100.1," "100.2," and "100.3" without identifying the law these sections can be found under, or other information to determine the law these allegations refer to (*id.* at ¶¶ 45-47).

[21] The Court construes Plaintiffs' citations to Article III, Section 2 of the United States Constitution, *see* Dkt. No. 14 at ¶ 53, and citations to 28 U.S.C. §§ 1331 and 1332(a), *see id.* at ¶ 55, as citing statutes for the purpose of jurisdiction and not as statutes under which Plaintiffs are claiming a cause of action against Defendants.

Amendments to the United States Constitution. Dkt. No. 14 at ¶¶ 54, 69.

To state a claim under Section 1983, a plaintiff "must allege (1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). Defendants argue, *inter alia*, that they are not liable pursuant to Section 1983 because Plaintiffs failed to identify any official unlawful policy of Duanesburg or DSS which violated their constitutional rights. Dkt. No. 23-1 at 18; Dkt. No. 26-1 at 10.

A local government[22] may not be held liable under Section 1983 for an "injury inflicted solely by its employees or agents." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *see also Newton v. City of New York,* 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). Instead, "[p]laintiffs who seek to impose liability on local governments under [Section] 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (quoting *Monell*, 436 U.S. at 691). A school district's liability under *Monell* can be premised on any of the following three theories:

> (1) that a district employee was acting pursuant to an expressly adopted official policy; (2) that a district employee was acting pursuant to a longstanding practice or custom; or (3) that a district employee was acting as a 'final policymaker.'

*J.L. v. E. Suffolk Boces*, 113 F. Supp. 3d 634, 643 (E.D.N.Y. 2015) (quoting *Hurdle v. Bd. of Educ. of City of New York*, 113 F. App'x 423, 424-25 (2d Cir. 2004)).

---

[22] For Section 1983 purposes, school districts are considered to be local governments and are subject to the same standards of liability. *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 193 (E.D.N.Y. 2015), *aff'd,* 633 F. App'x 14 (2d Cir. 2016).

13

Here, Plaintiffs' Amended Complaint fails to identify any official policy, longstanding practice or custom of the School District or DSS that caused a violation of their constitutional rights. Accordingly, Plaintiffs have failed to allege a valid Section 1983 claim against Defendants. *See id.* at 646 (dismissing plaintiff's claim against a school district because the complaint failed "to allege that the District had an official municipal policy that caused the [p]laintiffs' alleged constitutional injuries"); *Yant v. New York City Police Dep't*, No. 85 CIV. 4512 (MGC), 1987 WL 16372, at *1 (S.D.N.Y. Aug. 26, 1987) (granting a motion to dismiss where plaintiff made "no suggestion or possible inference of any kind of official policy, practice or custom on the part of the Police Department").[23]

Accordingly, Plaintiffs' claim premised on 42 U.S.C. § 1983 is dismissed.[24]

### F. Opportunity to Amend

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v.*

---

[23] Because the Court finds that Plaintiffs' Amended Complaint fails to identify any official policy or longstanding practice or custom that led to an alleged constitutional deprivation, the Court need not address Defendants' other arguments related to Plaintiffs' failure to establish a conspiracy, a violation of any constitutional right, or that individually named Defendants were personally involved in an alleged deprivation of Plaintiffs' constitutional rights. *See* Dkt. No. 23 at 17-18; Dkt. No. 26-1 at 10-11.

[24] Because the Court is dismissing Plaintiffs' Amended Complaint in its entirety, the Court need not address Defendants' argument that Plaintiffs' Amended Complaint fails to comply with Rule 8 of the Federal Rules or Civil Procedure, or Defendants' argument regarding the availability of punitive damages. *See* Dkt. No. 23-1 at 12-13, 18-19; Dkt. No. 26-1 at 9, 11.

14

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997).

Here, in light of the factual and substantive deficiencies in Plaintiffs' Amended Complaint set forth above, the Court finds that any amendment would be futile. Accordingly, the Court grants Defendants' Motions to dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

## V.   CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motions to dismiss, Dkt. Nos 23, 26, are **GRANTED in their entirety**; and the Court further

**ORDERS** that the Amended Complaint, Dkt. No. 14, is **DISMISSED with prejudice and without leave to amend**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules, and to close the case.

**IT IS SO ORDERED.**

Dated: November 29, 2023
Albany, New York

*[signature]*
Anne M. Nardacci
U.S. District Judge